NATIONAL SURETY CORPORATION, Respondent, vs. WYMORE, Appellant.

*May 5—June 3, 1958.*

For the appellant there were briefs by *Falge & Moran* of Ladysmith, and oral argument by *James P. Moran*.

For the respondent there was a brief and oral argument by *Daniel B. Merriam* of Ladysmith.

BROWN, J. The application by Wymore for the plaintiff's surety bond contains two provisions which, by the execution of the bond became a part of the contract of suretyship, and which are material now. The first is:

"4th. [Wymore promises] To indemnify and keep indemnified the corporation [that is, the surety] and save it harmless from and against any and all liability, losses, costs, damages, attorney's and counsel fees and disbursements, and expenses, of whatever kind or nature which the corporation may sustain or incur by reason or in consequence of having executed or procured the execution of the bond hereinabove applied for and/or any renewal, continuation, extension, or successor thereof and which the corporation may sustain or incur in taking any steps as it may deem necessary, in

making any investigation, in defending or prosecuting any actions, suits, and/or other proceedings which may be brought under or in connection therewith, and in recovering or attempting to recover salvage or any unpaid bond premium(s), in obtaining or attempting to obtain release from liability, in securing and further indemnifying itself against loss under such bond or any renewal, continuation, extension, or successor thereof or in enforcing any covenant(s) of this agreement. Copy of any voucher, sworn itemized statement, or other evidence of payment of any of the foregoing shall be *prima facie* evidence of the liability of the undersigned [that is, Wymore] therefor, it being understood that the undersigned shall be liable for all such payments made in good faith in the belief that the corporation was liable therefor and/or any and all disbursements made in good faith in the discretion of the corporation, whether or not they were actually necessary."

The other is:

"10th. That the corporation shall, wholly within its discretion and at its election, have the right to take possession of all or any part of the work of the said contract, whenever, in its sole opinion, action is desirable, necessary, requisite, or proper, and at the expense of the undersigned and each of them to complete or cause the completion of any of such work or relet or consent to the reletting or completion of such contract."

If the jury had answered that Wymore had abandoned the work there would, of course, be no question but what the surety was obligated to the city to make good his defaults, but it does not follow that, because Wymore did not abandon, the surety has no obligation or is unjustified in assuming an obligation and cannot recover from Wymore the expense of doing so.

The record sets out much evidence of the city's complaints of Wymore's performance of the contract and the communication of its dissatisfaction to the surety. On August 31, 1954, the city attorney wrote Wymore:

"Dear Mr. Wymore:

"It has come to my attention that there has been no progress on the River avenue sanitary sewer replacement project in the past ten days. As the project has excavations on either side of the highway, it is dangerous, even though warning lights have been placed about them.

"I therefore request that you inform me by return mail as to what your intentions are as to the project. If you intend to complete the project, please have your equipment on the job and keep it there until the project is completed."

Wymore removed his equipment on September 15th.

On September 20, 1954, the city sent him the following written warning:

"Dear Mr. Wymore:

"Notice is hereby given that the city of Ladysmith intends to terminate the contract between itself and Glenn Wymore dated the 23d day of April, 1954, for the reason that while the contractor, Glenn Wymore, is giving his personal supervision to the work, it is the opinion of the city that Mr. Wymore does not have available a competent foreman or superintendent thoroughly versed in trench excavation where extensive cribbing is required. It is also apparent that unsafe conditions existed on either side of Highway 8 at River avenue because the trench was improperly and unsafely cribbed and the pavement was in danger of failure for lack of proper support. The contractor does not have available the proper tools and equipment to process his contract at a reasonable rate of completion. Further, contrary to the contract between the city and Mr. Wymore, two streets were entirely blocked and the gutter and watercourses have not been kept clear.

"Unless within ten days after receipt of this notice by the contractor, the violations of the contract shall cease and satisfactory arrangements for correction be made, the contract shall, upon the expiration of said ten days, cease and terminate.

"Very truly yours,
"Daniel B. Merriam,
"City Attorney."

On or about September 20th and on September 30th, representatives of the surety conferred with Wymore and with the city officials.

The bond, besides guaranteeing Wymore's performance of the contract, holds the city harmless against all claims and damages to persons or property arising from Wymore's acts or defaults to a maximum amount of $9,000.

Whether Wymore abandoned the project or was discharged from it, and whether the discharge was wrongful or for good cause, are questions which might be material in an action between Wymore and the city for breach of contract. They are not decisive here. The present issue is whether, in the situation just described, the surety may, in the exercise of discretion and in good faith, invoke the permission given it by paragraph 10th of the application to take over the work at Wymore's expense, found to be $2,961.04, or whether it must stand by under a liability of $9,000 until Wymore and the city have resolved their difficulties.

We conclude that the merits of the controversy between Wymore and the city are not such as to give the surety no discretion and to impute bad faith to it in taking possession of the work and completing it.

The trial court decided properly.

*By the Court.*—Judgment affirmed.